[No. C. D. 4475. En Banc. April 11, 1963.]

*In the Matter of the Disciplinary Proceeding Against* HARRY D. GREER, *an Attorney at Law.**

*Reported in 380 P. (2d) 482.

*T. M. Royce*, for Board of Governors.

*Vernon R. Pearson* (of *Davies, Pearson, Anderson & Pearson*), for respondent.

HALE, J.—This is a disciplinary proceeding. Invoked are Canons of Professional Ethics 12 and 13, RCW Vol. 0, on fees, and Canon of Professional Ethics 29, RCW Vol 0, upholding the honor of the profession.

Respondent Harry D. Greer was admitted to practice in the courts of this state in 1955, and was a practicing attorney in Vancouver at the commencement of these proceedings. Acting as an attorney, he brought an action against one Horace F. Kiggins to collect a clothing store account, and reduced the same to judgment. Subsequent negotiations and an extension of time brought Mr. Kiggins to respondent's office where he informed respondent that he was impecunious but believed that he was entitled to funds from the estates of his father and mother. He requested respondent to look into the matter.

On investigation, respondent learned that John P. and Mary Kiggins, the parents of Horace, had left a substantial estate in Clark County, and that the same had been in process of administration through trust agreements since 1941, the total estate having run in excess of $800,000. Horace, one of four children, had been drawing about $400 a month regularly from the trust funds, representing distribution on his share. The sums were delivered to him regularly by his brother, acting as trustee.

Respondent learned that, earlier in the administration of the Kiggins' estates, there had been insufficient cash to make the proper distribution, since a large portion of the estates was in real property, and that the probate court

had, in its decree, expressly granted Horace a lien in the sum of $19,665.51, effective as of November 6, 1957, on certain real property held by the estate.

On January 6, 1959, respondent prepared a retainer agreement in which he was retained as attorney by Horace Kiggins to foreclose or liquidate the $19,665.51 lien on a contingent basis. The contract between attorney and client was addressed to the attorney as if it were a letter and stated, among other things:

"Your fee in this matter will be contingent upon your success and will be as follows:

"If the claim is settled without resort to court action, you are to retain 25% of all sums recovered; If an action is commenced and is settled prior to trial, you are to retain one-third of all sums recovered; If the action is tried or is settled after commencement of trial, you are to retain 40% of all sums recovered; If after trial the case is appealed, you are to retain 45% of all sums ultimately recovered. If nothing is recovered by you, it is understood that I will owe you nothing for your services."

Respondent took the retainer agreement to his client's home, where it was signed by the client and was witnessed by the latter's wife. At the time the retainer agreement was signed, respondent's acquaintance with his client was slight, and he had little or no reason to believe that his client was a heavy drinker or might possibly be considered an alcoholic. However, in their subsequent conversations following the signing of the retainer agreement, it should have become quite apparent to respondent that, for many years, his client had been in and out of the hospital for treatment for alcoholism, had other serious health problems, had shown a singular lack of interest in his financial affairs and his well-being, and had been disinclined to make any serious efforts to establish or maintain his legal rights.

For many years, the client had suffered a substantial portion of the estate to be administered by his brother and sister as trustees without making any inquiry whatever, and had evidenced no knowledge of the lien itself to his attorney. Both the client's brother and his sister had maintained a protective and solicitous attitude toward him.

Respondent sought the opinion of another attorney concerning the procedure involved in foreclosing a lien of this type, since none had been outlined in the language of the lien itself, and was given the opinion that the lien was foreclosable instanter. Whereupon, the respondent made a demand in writing upon the attorney for the estate, requested that the lien be paid at once, and gave notice that suit would be instituted to foreclose if payment was not forthcoming. In his letters to counsel for the estate, respondent also demanded payment in full for interest, which he conscientiously believed was due. The estate, through its counsel, acknowledged liability for the lien and promised to pay the same upon acquiring the cash, but declined liability for the interest.

In about 4 months from the time that the attorney had made his original demand upon the estate, counsel for the estate delivered to the respondent the amount of the lien in full. Respondent paid to himself from this fund an attorney's fee in the amount of $4,916.38, this being 25 per cent of the amount recovered, and further withheld the sum of $412.70, which represented 25 per cent of $1,650.82, the amount claimed as interest.

The estate declined to pay the interest. Respondent stated that he assumed the estate would pay the interest by giving its note payable at $50 per month. However, no interest was ever paid or collected by or on behalf of Horace Kiggins, the client. Thus, the contingent fee of $412.70 for interest sought to be recovered was, in fact, unearned.

In the course of his negotiations with the estate and counsel to recover on the lien, respondent observed that no final accounting had ever been made by the trustees, and he recommended to his client, Horace F. Kiggins, that an accounting be demanded. Whereupon, the attorney and his client entered into another retainer agreement in which the client employed counsel to represent him in obtaining an accounting of the distribution of the assets of the Kiggins' estates, giving the attorney discretion to act on the client's behalf on any matter deemed advisable to the attorney.

This second retainer agreement contained the following provisions:

"Mr. Greer's fee is to be Five Hundred Dollars ($500.00) plus 25% on all funds which may be discovered by him . . .

"In the event suit is required, Mr. Greer's fee is to be increased to one-third of all sums so discovered or liquidated.

"In the event trial of said suit is necessary, Mr. Greer's fee is to be increased to 40% of said sums.

"Mr. Greer is also to be given an expense fund consisting of $250.00 from which he is authorized to expend funds necessary to the investigation and processing of this claim."

Respondent demanded an accounting from the attorney for the estate and was informed that one was being prepared because of federal estate tax implications, and that it would be furnished to the attorney shortly. From the $250 cost fund in his possession retained by him from his client's funds out of the original lien settlement, respondent expended $6 for a certified copy of the trust deed and $2.70 for copies of the accounting report; thus, only $8.70 was actually expended by the attorney from the $250 expense fund item retained by him from his client's funds.

In October, 1959, a copy of the federal tax audit was furnished to respondent by a firm of certified public accountants, which audit demonstrated that the lien through which some $19,000 had been delivered to respondent's client was erroneous, excessive, and constituted an overpayment to the heir in excess of $8,000. On learning of the overpayment to the client by the estate, both attorney and client lost interest in any further accounting proceeding. The client made no demand whatever of respondent for repayment of any portion of the $500 retainer fee, nor did he demand a return of the balance of the expense fund from which the $8.70 had been expended.

Respondent placed the remainder of the expense fund, or "costs" as he refers to them, in his office safe and used the same from time to time in making change in his office. He rendered no statement for professional services, nor did he advise his client that he claimed an attorney's lien on

these costs, which, after the deduction of the $8.70 expended, left $241.30. The attorney steadfastly asserts that his client made no demand upon him for a return of any portion of the $500 retainer, or for a refund of any part of the costs retained by the attorney in securing an accounting for the estate. In the proceedings before the trial committee, respondent asserts his right to an attorney's lien on the unexpended cost fund for the reason that he gave Mrs. Kiggins some advice in a domestic relations matter, and sought to effect a reconciliation between Mrs. Kiggins and her husband. We think this assertion of an attorney's lien is in the realm of pure afterthought and warrants no further consideration.

The facts set forth in the foregoing were established with practically no conflict in the evidence. Respondent testified in detail as to each transaction and made no effort whatsoever to conceal any of the transactions with his client. He takes the position that his contracts and his relationship with his client were well within the canons of professional ethics, and, since they involved at worst the reasonableness of his fees, they are cognizable only in a civil court and not in a disciplinary proceeding.

The formal complaint was regularly made and filed with the Board of Governors of the Washington State Bar Association, and trial was had before a regularly constituted trial committee consisting of three members of the bar. At the conclusion of the hearing, the committee made and entered its findings of fact and conclusions of law in which they found:

(1) That the contingent fee contract for liquidation of the lien was not improper and was consonant with Canon of Professional Ethics 13, RCW Vol. 0, and RCW 4.84.010;

(2) that the fee of 25 per cent of $1,650.82 for interest was improper and constituted an overcharge since no interest was ever collected;

(3) that the fee of 25 per cent for recovery of the lien was excessive under the circumstances, but was not unconscionable, and was not the basis for disciplinary proceedings;

(4) that the $500 fee for services performed in seeking an accounting was excessive but was not unconscionable;

(5) that the respondent's retention of the balance of the costs deposited with him was improper, but, in view of the client's failure to request or demand a refund, no disciplinary action should lie on this item; and

(6) that the complaint be dismissed.

The board adopted the findings of fact of the trial committee and its conclusions in part, but disagreed with the conclusion that the complaint ought to be dismissed. The board cited the attorney to be reprimanded for retaining the $412.70 contingent fee for interest uncollected and the $241.30 for unexpended costs; the attorney refused the reprimand and appealed the decision of the board, thereby bringing the case here.

 Respondent correctly asserts the rule that the matter of reasonableness or fairness of fees is a problem for the civil courts and ought not to be the basis for a disciplinary proceeding. *In re Smith,* 42 Wn. (2d) 188, 254 P. (2d) 464, declares the rule in this language:

" . . . when the trial committee and the board found that the fee here retained was not unconscionable, the disciplinary proceeding, in so far as it relates to the amount of fee, should thereupon have been terminated. The determination that the fee retained was 'excessive' therefore cannot serve as a basis for the recommended reprimand."

The *Smith* case further states:

" . . . the use of disciplinary proceedings to determine whether or not a fee charged or collected is reasonable is wholly inappropriate. See *Herrscher v. State Bar of California,* 4 Cal. (2d) 399, 49 P. (2d) 832."

Of similar import is *In re Wiltsie,* 109 Wash. 261, 186 Pac. 848.

 Further, we must assume that a disciplinary proceeding is civil, not criminal, in nature. *In re Jett,* 6 Wn. (2d) 724, 108 P. (2d) 635. Yet, it has quasi-criminal overtones in that it is brought for the protection of the public, it arises from a claim of misconduct on the part of a lawyer, and its consequences are unavoidably punitive. *In re Little,*

40 Wn. (2d) 421, 244 P. (2d) 255. That the simple question of whether or not an attorney's fee is reasonable or unreasonable, fair or immoderate, is cognizable in a civil court only is a sensible rule.[1] Any rule to the contrary would place the practicing attorney at the mercy of a scheming, malicious, or unreasonable client and could throw him into an arena where his very reputation and career were at stake purely out of whim, malice, or irrational motive. Accordingly, we hold that the trial committee and the board correctly declined disciplinary comment on the principal contingent fee for recovery of the lien and on the $500 retainer for demanding an accounting. These items are exclusively matters of contract between attorney and client, and, since they were well within the provisions of the Clark County Bar Association's minimum fee schedule governing contingent fees, their mention here is relevant only as they affect the other items.

However, the total of the relationship of the parties must necessarily be considered in determining whether or not the item of interest and the item of costs had been earned or had been authorized in whole or in part. It should be pointed out that respondent, on collecting the lien from the estate, kept an attorney's fee of $4,916.38, which represented 25 per cent of the principal amount, $19,665.51, obtained from the estate. When it subsequently developed that this was, in fact, a gross overpayment and that the client was really entitled to only $11,323.85, we can readily see that the client's contingent fee retainer resulted in an overpayment not only to the client, but to the attorney. Also, the fee of $500 to secure an accounting

---

[1] This court has not yet found it necessary to employ the procedures used elsewhere and at common law in directing the refund of excessive fees in a summary proceeding.

The power of a court to compel an attorney to return to his client money or property in his possession, which he has no right to retain, existed at common law and could be exercised in the action in which the attorney appeared. This summary power has been exercised in other jurisdictions in the very cause in which the attorney acted as counsel by the issuance of orders to show cause upon affidavit in divorce and probate proceedings. *Akers v. Akers*, 233 Minn. 133, 46 N. W. (2d) 87; *In re Long*, 287 N. Y. 449, 40 N. E. (2d) 247, 141 A. L. R. 651.

was earned by little more effort on the part of the respondent than to write a letter requesting the same and a promise by counsel for the estate that an accounting would be forthcoming shortly. Inevitably, these aspects of the relationship between attorney and client must be considered in determining the proper rule applicable here. While the parties are to be left to the civil courts as to the attorney's fee in collecting the lien and the retaining of the $500 fee for demanding an accounting, we doubt that the rule of reasonableness governs the relationship between attorney and client here in considering the fee for interest and the costs withheld.

While a determination that a fee is reasonable or unreasonable is appropriate only to a civil court, where the fee retained or demanded can be considered to be unconscionable, it is a matter for a disciplinary proceeding. The word "unconscionable," as is the case with terms like reasonable, unreasonable, fair, moderate, inordinate, excessive, exorbitant, etc., is not susceptible of exact definition. For example, Webster's New International Dictionary (2d ed., 1949), defines "unconscionable" as:

"1. Not conscionable; unreasonable; . . . 2. Not guided or controlled by conscience; unscrupulous. . . ."

Black's Law Dictionary (4th ed., 1951), describes "unconscionable bargain" as:

"An unconscionable bargain or contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."

We think that supplying amplifying phrases such as "shocking to the conscience," "monstrously harsh," "exceedingly calloused," and other expletives, adds little or nothing to the definitive qualities sought to be established by the law. They depend largely for their meaning upon who is speaking and who is listening. When the courts use the expression "unconscionable" in classifying a fee, we think they mean an amount under the circumstances which neither lawyer nor client can sensibly argue to be other-

wise. A legitimate dispute could well arise between an attorney and his client concerning whether or not an attorney's fee, either claimed or kept, is unreasonable or excessive or even exorbitant, thus requiring the intervention of the civil court and the hearing of expert witnesses on both sides to reach a fair decision. It may be that the client is ignorant of the research involved in the problems presented, of the long and tedious hours of investigation represented by the lawyer's work. It may be that the lawyer places too high a value upon his services, that he too well remembers the long and arduous hours spent in acquiring a legal education and passing the bar examination, or that he assesses too high a charge with too little an experience. However, these are all factors which are subject to review by the courts in an action in contract.[2]

Where, however, ethical considerations take us from one end of the spectrum marked "reasonable" through categories designated successively as unreasonable, excessive, immoderate, inordinate, exorbitant, and unconscionable, we move in a direct line from the civil arena into a disciplinary forum. Differences of opinion can legitimately arise as to whether or not a fee is reasonable or unreasonable, or even excessive or exorbitant; but we find that sensible differences of opinion do not arise where the fee is palpably unconscionable.

█ Can an attorney conscientiously assert that his years of study, his learning, his standing at the bar, justify his payment for professional services where no services were performed? Or can it sensibly be argued that money for costs should be kept where no costs were incurred? Mere statement of the proposition is in itself an answer.

By no criteria known to us could the attorney be permitted to keep either the contingent fee on interest never recovered by him or cost moneys never expended by him.

[2] For a compendium of the factors which may be taken into consideration in ascertaining the reasonableness of an attorney's fee, see 3 Duke Bar Jour. 35 (1953).

To place the stamp of approval on such transactions endorses the unconscionable.

We approve the recommendation of the Board of Governors, and it is ordered that Harry D. Greer be reprimanded.

ALL CONCUR.