[No. 1589-3. Division Three. November 24, 1976.]

MONTGOMERY WARD & COMPANY, INC., *Respondent*, v. ANNUITY BOARD OF THE SOUTHERN BAPTIST CONVENTION, ET AL, *Appellants*.

*Jack Steinberg* (of *Steinberg & Steinberg*), for appellants.

*Michael D. Finney* (of *Walters, Whitaker & Finney*), for respondent.

McINTURFF, C.J.—Isador Schreiber appeals from a judgment declaring the respective lease rights of himself as landlord and Montgomery Ward & Company, Inc. (Wards) as tenant. We affirm.

Mr. Schreiber is the owner of a shopping center in Yakima, Washington, where Wards is a tenant. He had purchased the premises and a leasehold interest in 1964 from a predecessor. The Annuity Board of the Southern Baptist Convention, is a nominal party to this action, as mortgagee of the premises. Disagreement developed between Mr. Schreiber and Wards over the meaning of certain terms and conditions of their lease. Specifically, Wards demanded that Mr. Schreiber assume the cost of maintenance of an outdoor reader board sign. This disagreement resulted in the filing of an action by Wards against Mr. Schreiber. Wards also sought consent from Mr. Schreiber to add a garden sales area of 25,000 square feet as an improvement to the existing building. Mr. Schreiber conditioned his consent to the improvement upon dismissal by Wards of its reader board sign claim and assumption by it of all addi-

tional expenses arising from the improvement. Wards combined these claims and successfully pursued the present action to have Mr. Schreiber assume the cost of sign maintenance and to obtain his unconditional consent to the improvement under the terms of the lease. This appeal by Mr. Schreiber followed.

Mr. Schreiber first assigns error to the court's finding of fact that lease paragraph No. 19 makes sign maintenance the responsibility of the landlord. He argues the court did not properly consider the custom establishing tenant's obligation to repair the demised premises.

Lease paragraph No. 19 provides:

The Tenant shall make repairs made necessary by its negligence and all repairs to the interior non-structural portions of the building on the leased premises, and after the first year of the term the plate glass therein, necessary to maintain the premises in good order and repair; provided, however, that irrespective of any negligence on the part of the Tenant, the Tenant shall not be obligated to make any repairs or replacements made necessary as a result of damage caused by fire, the elements, or any cause covered by the extended coverage and insurance required to be carried by the Landlord. The Landlord shall make all repairs and replacements . . . other than those specifically required to be made by the Tenant hereunder, . . .

With reference to lease paragraph No. 19, the trial court found in finding of fact No. 5:

That paragraph 19 of the lease, Exhibit 1, is unambiguous and its application to the lighted top portion and bottom reader board portion of the sign is clearly intended to be the landlord's responsibility, and considering the similarity and uniformity of design, age, and function the sign is one integral unit.

Upon this finding, the court granted judgment for Wards' previously incurred expenses for maintenance, and ordered Mr. Schreiber to maintain the sign in the future.

■ A lease is to be read within its four corners, with

words applied in their common and ordinary meaning.[1] When the meaning of language employed by the parties is plain and unambiguous, there is no room for further construction by the court through reference to external aids such as custom.[2]

Referring to lease paragraph No. 19 quoted above, there is no specific requirement that the tenant repair the reader board sign. On the contrary, the lease provides that "the Landlord shall make all repairs and replacements . . . other than those specifically required to be made by the Tenant." Absent specific enumeration of reader board sign maintenance among the tenant's responsibilities in lease paragraph No. 19, we agree with the trial court that the language of the lease is clear and unambiguous, and obligates the landlord to maintain the sign. Because language of lease paragraph No. 19 is clear and unambiguous, there is no necessity to refer to argued custom as a further interpretive aid.

Mr. Schreiber next assigns error to the court's finding that his withholding of consent to the improvement was unreasonable under the facts and circumstances of this case. He argues that provisions of the lease are unfair to him by reason of claimed financial hardship which he will incur in the event of improvements. Mr. Schreiber contends he therefore acted reasonably in refusing his consent unless reimbursed for attending expenses. We cannot agree.

Lease paragraph No. 5 provides in pertinent parts:

The Tenant from time to time may make any alterations, additions or improvements to any of the buildings on the leased premises, may install or remove any signs, and may erect or remove any wall or partition; provided, however, that the Tenant shall not make any structural alterations, additions, or improvements and will not install any signs either at the beginning of or during the

---

[1] *Benhart v. Gorham*, 14 Wn. App. 723, 725, 544 P.2d 141 (1976); *James S. Black & Co. v. F.W. Woolworth Co.*, 14 Wn. App. 602, 609, 544 P.2d 112 (1975).

[2] *Rydman v. Martinolich Shipbuilding Corp.*, 13 Wn. App. 150, 153, 534 P.2d 62 (1975); *Pine Corp. v. Richardson*, 12 Wn. App. 459, 469, 530 P.2d 696 (1975).

term without in each instance first securing the written consent of the Landlord, *which consent shall not unreasonably be withheld;* . . .

(Italics ours.) The lease further requires the landlord to assume the attending cost of taxes, insurance, painting, and maintenance of any improvements.

In response to Mr. Schreiber's withholding of consent for claimed financial hardship, the court entered finding of fact No. 10:

> That the conditions attempted to be exacted by defendants are not reasonable in that increased insurance costs in Paragraph 9 of the lease, taxes in Paragraph 17 of the lease, painting the exterior in Paragraph 20 of the lease, and routine maintenance as provided in Paragraph 19 of the lease are all landlord duties bargained for by the parties *including all "improvements now and hereafter thereon."* Attorney fees or waiving the right to sue on plaintiff's first cause of action are unreasonable conditions.

(Italics ours.) From this finding, the court made conclusion of law No. 4:

> That the consent of the landlord has been withheld unreasonably and no further consent is required, and plaintiff is hereby authorized to construct the building at issue subject to the conditions in finding of fact No. 11.

■ The reasonableness of withholding consent under the terms of the lease presents a question of fact, as shown in *Robbins v. Hunts Foods & Indus., Inc.*, 64 Wn.2d 289, 296, 391 P.2d 713 (1964):

> It is to be measured by the action which would be taken by a reasonable man in like circumstances. Reason, fairness, and good faith must be the guide. Whim, caprice, or opportunism, however expedient the end, will not suffice.

Here, Mr. Schreiber is first attempting to compel Wards' assumption of expenses and thus a reformation of this otherwise enforceable contract by withholding his consent to the improvement. Second, he is attempting to compel Wards' assumption of attorney fees for which Wards has not been shown to have a legal liability under the lease or otherwise. Third, Mr. Schreiber is attempting to compel

Wards' dismissal of an unrelated action, the reader board sign claim. This constitutes substantial evidence supporting the court's finding of unreasonableness.[3]

In his final assignment of error, Mr. Schreiber contends the lease should be rescinded or reformed as an unconscionable bargain, citing claimed financial hardship which the lease requires him to assume in the event of improvements by Wards. The lease does require him to assume increased costs of insurance, taxes, exterior painting, and routine maintenance of "all improvements now and hereafter thereon." Mr. Schreiber has also incurred attorney fees in the present litigation for which he believes Wards to be responsible.

An unconscionable bargain eludes definition, but some have tried, as in *In re Greer*, 61 Wn.2d 741, 749, 380 P.2d 482 (1963), quoting from Black's Law Dictionary (4th ed. 1951):

> "An unconscionable bargain or contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."

" 'Shocking to the conscience,' " " 'monstrously harsh,' " and " 'exceedingly calloused' " are synonyms.[4] The court in *Carlson v. Hamilton*, 8 Utah 2d 272, 274-75, 332 P.2d 989, 990-91 (1958), stated the defense as follows:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of

---

[3]*See Robbins v. Hunts Foods & Indus., Inc.*, 64 Wn.2d 289, 296-97, 391 P.2d 713 (1964).

[4]*In re Greer*, 61 Wn.2d 741, 749, 380 P.2d 482 (1963).

. its good offices in the enforcement of such unconscionability.[5]

(Footnotes omitted.)

■ The existence of an unconscionable bargain presents a question of law for resolution by the court upon facts in evidence.[6] In searching this record for unconscionability, there is no evidence of deceptive sale practices, fraud, misrepresentation, undue influence, duress, high-pressure tactics, overreaching, fine print, or otherwise taking advantage by Wards of any necessity or weakness in Mr. Schreiber or his predecessor under the lease. On the contrary, the court entered findings, to which no error is assigned on appeal, that there existed no disparity of bargaining position between past or present parties to the lease. All were free to accept or reject the rights and duties imposed. Neither party to this action is a neophyte in the realm of commercial leases, for Wards is a national corporation with many retail outlets, while Mr. Schreiber testified that he is the owner of many stores and shopping centers in the state of Washington.

Absent evidence of unconscionability, or other defense to performance, the parties are bound by their contract.[7] We have only the power to apply the intent of the parties, and not to reform a hard or oppressive bargain.[8] This record supports only the legal conclusion that Mr. Schreiber alone created his claimed financial hardship by his failure to

---

[5]See RCW 62A.2-302 and Official Comment 1, RCWA 62A.2-302; Schroeder v. Fageol Motors, Inc., 86 Wn.2d 256, 259-60, 544 P.2d 20 (1975); Williams v. Walker-Thomas Furniture Co., 350 F.2d 445 (D.C. Cir. 1965); Annot., 18 A.L.R.3d 1305, 1307-08.

[6]See Schroeder v. Fageol Motors, Inc., 86 Wn.2d 256, 262, 544 P.2d 20 (1975); Official Comment 3, RCWA 62A.2-302.

[7]Kinne v. Kinne, 82 Wn.2d 360, 363, 510 P.2d 814 (1973); Lloyd v. MacCallum-Donahoe Co., 127 Wash. 180, 183, 219 P. 849 (1923); Restatement of Contracts § 70 (1932).

[8]McKelvie v. Hackney, 58 Wn.2d 23, 30, 360 P.2d 746 (1961); see Westland Constr. Co. v. Chris Berg, Inc., 35 Wn.2d 824, 835, 215 P.2d 683 (1950).

446

foresee the consequences of his voluntary bargain to assume the landlord's responsibilities under the lease.

Judgment of the Superior Court is affirmed.

GREEN and MUNSON, JJ., concur.