UNITED STATES of America, Plaintiff,

v.

Steven VAGUE, Defendant.

Appeal of Robert DE MEO,
Respondent-Appellant.

No. 82–1666.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1982.

Decided Jan. 18, 1983.

As Modified March 8, 1983.

As Amended on Denial of Rehearing and
Rehearing En Banc
May 18, 1983.

William M. Doty, Jr., Russo, Doty & Associates, Chicago, Ill., for defendant.

Susan Bogart, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff.

Before ESCHBACH and POSNER, Circuit Judges, and GRANT,* Senior District Judge.

POSNER, Circuit Judge.

This appeal from a judgment of civil contempt against attorney Robert De Meo brings up to us a question of first impression: whether a federal district judge has the power to compel, on his own initiative, a criminal defendant's attorney to return part of the legal fee that the attorney collected from the defendant, on the ground that the fee was exorbitant.

* Of the Northern District of Indiana.

A federal grand jury indicted Steven Vague and Gerald McDermott for possession of, and conspiracy to possess, goods stolen from O'Hare Airport in Chicago. Vague was 23 years old and lived with his parents. The family hired De Meo, a member of the Illinois bar, to represent Steven. The indictment had been returned on December 23, 1980; after some procedural skirmishing both defendants decided to plea bargain; and on March 16, 1981, Vague pleaded guilty to two counts of the indictment. Sentencing was set for April 23.

In reading the presentence report the district judge noticed among Vague's liabilities a $12,000 item described as Mr. De Meo's fee in the case. According to the report all but $1,000 had been paid. At the beginning of the sentencing hearing the district judge asked De Meo to explain the fee. De Meo replied that he had set it on the assumption that the case would go to trial, and under prodding from the judge conceded that therefore the fee should be reduced. The judge adjourned the sentencing hearing to May 12 to give De Meo time to think about a suitable reduction.

At the reconvened hearing De Meo said he had decided to reduce his fee to $8,000, but the judge was not satisfied and proceeded to question De Meo, Steven Vague, Vague's father, and the assistant U.S. attorney who had handled the case against Steven—all of whom were present for the sentencing—concerning De Meo's work on the case. The judge reserved decision on the fee and then sentenced Vague (to 90 days on work release followed by five years on probation).

The fee order was entered later. 521 F.Supp. 147 (N.D.Ill.1981). The judge found that De Meo had put in at most 40 hours of work beneficial to his client, of which about two-thirds had been spent in listening to tape recordings of an electronic surveillance, and that De Meo's work had been competent but not outstanding. According to the presentence report McDermott's lawyer had charged his client only $1,250. The judge concluded that the maximum reasonable fee for De Meo's represen-

tation of Vague was $2,500, and ordered De Meo to return the difference between that amount and what he had already been paid. De Meo refused. The judge adjudged him in civil contempt and De Meo has appealed from the judgment. The Department of Justice has filed a brief on behalf of the district judge.

■ In refusing to reduce his fee below $8,000, De Meo took the position that his fee arrangements with his client were none of the district judge's business unless and until his client complained—and neither Steven Vague nor his father (who apparently is footing the bill) has complained. That position is untenable. Canon 3(B)(3) of the Code of Judicial Conduct for United States Judges provides that a federal judge "should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware," and section 2–106(a) of the Illinois Code of Professional Responsibility provides that "a lawyer shall not enter into an agreement for, charge, or collect an illegal or excessive fee." This prohibition, which obviously establishes a category of "unprofessional conduct," is not limited to contingent-fee agreements or to fees payable by children or others who cannot make enforceable contracts. Applied to a freely bargained fixed fee such as De Meo's for representing Steven Vague, the prohibition may seem paternalistic or worse, but its application even to a fixed-fee contract with a competent adult cannot be questioned after *In re Kutner,* 78 Ill.2d 157, 35 Ill.Dec. 674, 675–76, 163–64, 399 N.E.2d 963, 964–65 (1979). Although the federal courts are not bound to apply state rules of professional ethics to lawyers practicing before them, *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), we may assume without deciding that they would apply the Illinois rule as interpreted in *Kutner,* and therefore that when the district judge discovered that De Meo had charged a fee that apparently violated section 2–106 he was duty-bound to take some action.

But the question is whether he took the right action. The Commentary to Canon 3(B)(3) suggests that he should have reported the matter to the ethics committee of the Illinois bar or the Executive Committee of the United States District Court for the Northern District of Illinois, in which are vested as we shall see the district court's disciplinary powers. The district judge did neither. He postponed sentencing till after a hearing on the alleged ethical violation and then ordered the lawyer to disgorge the fruits of the violation.

█ If he had not discovered the alleged violation until after he sentenced Vague and thereby terminated the criminal case, the judge could not have ordered De Meo to return a portion of the fee. He would have lost jurisdiction over the criminal case and would have had no authority to start a new proceeding against De Meo. See *Matter of Innkeepers of New Castle, Inc.,* 671 F.2d 221, 230 (7th Cir.1982). Even if the judge had discovered the alleged violation before imposing sentence on Vague, if he had done nothing at all about it till after the case was closed probably it would then have been too late for him to do anything. Cf. *Brown v. Watkins Motor Lines, Inc.,* 596 F.2d 129 (5th Cir.1979). Only the judge's action in postponing sentencing till after he had investigated the fee question gives his order of restitution the appearance of being ancillary to the criminal proceeding, for it was the postponement that enabled him to act in the fee matter before imposing sentence. But the power to order restitution of an excessive legal fee should not depend on whether the restitution proceeding begins before or after the sentence is imposed. It would be inconsistent with the spirit of the Sixth Amendment and the Speedy Trial Act to encourage a district judge as in this case to postpone sentencing in order to deal with collateral matters.

By shearing the case of the accidental feature that the judge discovered and investigated the alleged unethical conduct before imposing sentence we bring into focus the principal objection to his action—it cast him in the role of a prosecutor. No one complained to him about De Meo's fee. The judge decided there might be a violation of the code of ethics, conducted the examination of De Meo and other witnesses, determined that a violation had in fact occurred, and prescribed the remedy. He assumed the role that the Vagues' lawyer would have played had they sued for restitution of the excessive fee paid De Meo.

There would have been no mixing of judicial and prosecutorial functions if the judge had simply referred the matter to an ethics committee. If the committee had found a violation, De Meo could have sought judicial review, and in the review proceeding the lawyer for the committee would have played the same role that a government lawyer plays in the appeal of a criminal case. As the matter was handled the district judge took the place of the committee. In representing the district court in this court, the Department of Justice is representing the only adversary to Mr. De Meo.

█ Prosecutorial and adjudicative functions are often combined in the administrative process—the Federal Trade Commission, for example, issues complaints and then adjudicates them, see 15 U.S.C. § 45(b). But such a combination is alien to traditional conceptions of the federal judiciary, and not only because a federal judge may not sit in a case in which he is a party. 28 U.S.C. § 455(b)(5)(i); Code of Judicial Conduct for United States Judges, Canon 3(C)(1)(d)(i). A federal judge may not insist that a criminal or civil proceeding be begun or continued. *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.1965); *Webster Eisenlohr, Inc. v. Kalodner,* 145 F.2d 316 (3d Cir.1944). "The judicial power is limited to deciding controversies. That has been its function historically; that is its function under the Constitution of the United States. No doubt a great deal goes on in the world which ought not to go on. If courts had general investigatory powers, they might discover some of these things and possibly right them. Whether they would do as well in this respect as officers or bodies expressly set up for that purpose may be doubted, but until the concept of

judicial power is widened to something quite different from what it now is courts will better serve their public function in limiting themselves to the controversies presented by parties in litigation." *Id.* at 319–20.

██ It is true that when a contempt of court is committed in his presence, a federal judge is allowed to prosecute the violator, determine the merits of the alleged violation, and punish the violator. See Rule 42(a) of the Federal Rules of Criminal Procedure; *United States v. Moschiano,* 695 F.2d 236, 250–52 (7th Cir.1982). But that is a situation where the judge must act immediately to uphold the authority of the courts. There was no comparable exigency here; the matter could have been referred to an ethics committee. It is also true that a federal court of appeals can "take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar," Fed.R. App.P. 46(c), even if there is no complaint; that in such a case we are both prosecutor and judge; and that restitution could be an appropriate method of discipline. But the power granted by Rule 46(c) is granted to the court, not to an individual judge. The district court has similar powers, but, significantly, the General Rules of the United States District Court for the Northern District of Illinois vest the court's disciplinary powers not in one judge but in the court's Executive Committee, see Rule 3.51(A), composed of the chief judge and the next four most senior active judges, Rule 1.02(C)–(E). Rules 3.55–.57 set up elaborate procedures for disciplinary proceedings, and Rule 3.55(B) provides that "the Executive Committee may appoint the United States Attorney or any other attorney to prosecute disciplinary matters before it." And restitution is not allowed as a sanction. See Rule 3.54(A).

██ This was not an authorized disciplinary proceeding, and it was not a case where even though there is no dispute over fees the judge is required to take some judicial action—approve a class-action settlement, or approve the distribution of a fund in the court's possession—before a fee can lawfully be paid to the lawyer. See, e.g., *Prandini v. National Tea Co.,* 557 F.2d 1015, 1020–21 (3rd Cir.1977). A judge cannot be made to approve an unethical transaction, but the district judge in this case was not asked to do any such thing; he was just asked to decide Steven Vague's punishment for a crime. To reach the fee question the judge had to start a separate proceeding.

*Rosquist v. Soo Line R.R.,* 692 F.2d 1107 (7th Cir.1982), an appeal from an order by the same district judge, is distinguishable. A man and his two children brought a personal injury suit. After entry of judgment on the jury's verdict in their favor, their lawyer petitioned the court to direct payment to him of one-third of the net amount of the judgment, pursuant to his contingent-fee agreement with the father. The district judge appointed a guardian *ad litem* for the children, and later decided not to allow the father's lawyer to get the full agreed-upon fee. We upheld this decision. Although the guardian did not object in the district court to the fee award, he argued that he did not think it necessary for him to do so since the judge had already expressed his concern with the size of the fee; and in this court, the guardian vigorously defended the judge's action, which had had the effect of increasing the amount of the judgment available for the children. Thus there was a controversy between the lawyer and a party, not just, as here, between the lawyer and a judge—the Vagues have yet to raise a peep about the fee that the district judge has so vigorously denounced as excessive. Cf. *Hoffert v. General Motors Corp.,* 656 F.2d 161, 164 (5th Cir.1981). Moreover, in *Rosquist* the district judge was being asked to approve a fee award out of a fund in the court's control; the judge was thus required to take some action—and he could not be forced, as we have pointed out, to take an unjust action. Here he was not asked to do anything with reference to fees. Also, in *Rosquist* the judge's intervention was on behalf of children—seriously injured children, to boot—and there is a long equity tradition of regarding child litigants as wards of the court, to be treated more protectively than adult litigants. Steven Vague is an adult. Finally, *Rosquist* was a civil case and this is a criminal case. The intervention of a federal judge in the fee arrangements between a criminal defendant and his lawyer could reduce the ability of such defendants to obtain the effective assistance of counsel to which the Sixth Amendment entitles them.

██ So we cannot find any basis for what the judge did in this case—and lest this seem a timid and paltry ground for our

reversing him we add that we think it a mistake to graft onto a lawsuit an issue that the judge is neither asked nor required to resolve. That not only makes federal litigation even more complicated than it already is but casts the judge in the role of a prosecutor when there is the simple alternative of reference to an ethics committee. This is a matter of particular concern in a criminal case, for reasons already indicated. The distinguished district judge in this case, though displaying a praiseworthy concern with preventing unethical conduct, exceeded his power when he ordered De Meo to make restitution, and the judgment of contempt for disobeying that order is therefore

REVERSED.

GRANT, Senior District Judge, dissenting:

I must respectfully dissent from the majority decision in this case, believing as I do, that the distinguished trial judge properly and responsibly acted within his discretion in supervising the conduct of a member of the bar appearing before the court, and by compliance with the provisions of Canon 3(B)(3) of the ABA Code of Judicial Conduct, which reads:

A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware.

The majority opinion concludes that Judge Grady exceeded the bounds of this judicial authority, and that he should have referred the issue either to the Illinois Bar Ethics Committee or the Executive Committee of the United States District Court for the Northern District of Illinois. (At p. 807). However, nowhere is there any clear directive or procedure, nor is there any caselaw from this Circuit, mandating such action. The commentary to Canon 3(B)(3) itself indicates that "[d]isciplinary measures *may* include reporting a lawyer's misconduct to an appropriate disciplinary body." (emphasis added).

Judge Grady, in a very scholarly Memorandum Opinion, *United States v. Vague,* 521 F.Supp. 147 (N.D.Ill.E.D.1981), outlined the basis upon which he concluded that he had the right, the duty and the obligation to investigate and prevent this fee gouging. This appears to be a matter of first impression in the Circuit but, as Judge Grady

points out, other circuits have examined and sustained a trial court's right to supervise attorney's fees. *See Coffelt v. Shell,* 577 F.2d 30 (8th Cir.1978); *In re Michaelson,* 511 F.2d 882, 888 (9th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); *In re Silver,* 508 F.2d 647 (9th Cir.1974); *Cappel v. Adams,* 434 F.2d 1278, 1280 (5th Cir.1970). Since Judge Grady's district court decision, Senior Circuit Judge Fairchild, concurring in another case in this Circuit, wrote:

In my opinion, a court has some degree of supervisory power over attorney's fees charged for services in a case before the court. The power is derived from the relationship between the court and its officers . . .

*In The Matter of Innkeepers of New Castle, Inc.,* 671 F.2d 221, 232 (7th Cir.1982).

In a later case, *Rosquist v. Soo Line R.R.,* 692 F.2d 1107 (7th Cir.1982), this Court sustained Judge Grady's reduction of attorney fees. In that case, as here, the adult parties to the fee arrangement had not objected to the amount of fees. The District Court sua sponte, raised and pursued the subject of the amount of the fee awarded.

The supervision of attorneys before the court is a discretionary function of the trial court, and the decision of the trial court in such a function can be reversed only upon a showing of abuse of that discretion. Judge Grady acted very reasonably and very responsibly in questioning the fee exacted in this case, and inquiring into its continued validity after the plea bargain. There was more than ample precedence for his decision. There is no clear mandate by the Code of Judicial Conduct to refer the incident to others, but only the comment that he "may" do so. It was an alternative that he might have chosen but, rather, he opted to exercise his discretion by taking appropriate action.

I find no abuse of discretion by Judge Grady. I would affirm his judgment.