**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald STRAWSER, Defendant,**

**Appeal of Richard L. ANDERSON, Respondent-Appellant.**

No. 84–1367.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1986.

Decided Sept. 10, 1986.

Rehearing Denied Oct. 30, 1986.

Larry A. Mackey, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, Mo., for respondent-appellant.

Before POSNER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This is an appeal by Attorney Richard Anderson from an order requiring him to disgorge the excessive portion of an attorney's fee collected for representation of a defendant in criminal proceedings.

Michael and Ronald Strawser are cousins. Michael lived in Tulsa, Oklahoma, and Ronald in Anoka, Minnesota. In 1981, they participated in the distribution of marijuana, obtained from locations near Andrew and Edinburg, Illinois (in the vicinity of Springfield). Michael apparently played the more significant role and substantial amounts of the proceeds passed through his hands.

On September 1, 1981, Ronald was arrested (with others) after loading marijuana into a van at the Andrew location. Richard Anderson and Donald Gibson were law partners at that time, practicing at Kimberling City, Missouri. Michael arranged with Gibson that he and Anderson would represent Ronald. How it was that Michael selected lawyers in southwestern Missouri to represent Ronald in Springfield, Illinois is not indicated in the record.

On September 29, Ronald was indicted with three others. On September 16, however, Anderson had worked out a plea agreement under which Ronald would receive probation. Ronald supplied very significant information to the government.

Michael paid Gibson and Anderson sums totalling $52,500 according to Michael, $47,500 according to Anderson. There was a dispute whether all this money was for representation of Ronald. The money was proceeds of marijuana sales.

In early December, 1981, as the trial date approached, there was a bobble in the informal plea agreement, but it was reduced to writing December 28 and Ronald pled guilty to one count. On May 11, 1982, he was sentenced to probation.

In February, 1982, Anderson and Michael began to expect an indictment against Michael, and at least discussed Anderson's representation of Michael. Twenty thousand dollars ($20,000.00) of the money paid by Michael was paid after that time. On August 24, 1982, Michael was indicted on several counts involving 1981 marijuana transactions at Springfield, Edinburg, and Andrew, Illinois. One count of the same indictment charged Ronald with possession, with intent to distribute, of 430 pounds of marijuana on June 6, 1981 at Edinburg, Illinois. The information on which these counts was based seems to have been developed from records found at the Andrew location September 1. Apparently chagrined at not having drawn the 1981 plea agreement so as to foreclose this prosecution, Anderson represented Ronald again. He filed a motion to quash the prosecution on double jeopardy grounds, and arranged a plea agreement November 8, 1982 which preserved the right to appeal from the denial of the motion to quash. Ronald was sentenced to one year and one day.

On September 10, 1982, Anderson filed a motion on behalf of Michael seeking appointment of Anderson to represent him. Michael had been determined to be indigent, and Michael and Ronald waived any conflict. The magistrate decided, however, that there was a conflict, and on September 16 appointed a different attorney. The latter represented Michael, who pled guilty, and received a fee of $1,582.50 from the government under the Criminal Justice Act. He had spent two and three-quarters (2¾) hours in court and 75 hours out-of-court.

On April 11, 1983, Ronald wrote to the trial judge seeking assistance in obtaining representation on his appeal. The letter alleged that while Michael had paid Anderson $32,000 to represent him in the first case, and $25,000 to represent both him and Michael in the second case, Anderson was requesting an additional $5,000 to represent him on appeal. Ronald felt the amount paid was sufficient to include the appeal. He asked the trial judge to appoint Anderson as his public defender or to suggest that he handle the appeal without further compensation, or, if neither could be done, to appoint other counsel, since Ronald was indigent.

The district judge appointed Anderson. Anderson requested that someone else be appointed. On May 12, Chief Judge Ackerman issued an order reaffirming the appointment of Anderson, without compensation, and directing an evidentiary hearing to determine the facts and what sanctions, if any, were proper under the circumstances.[1]

On June 9, 1983, a hearing was held. Michael testified that he paid Gibson and Anderson a total of $57,500, consisting of cash payments of $25,000 to Gibson, plus Ronald's bond money of $7,500, and cash payments of $20,000 to Anderson, and the cancellation of a personal debt from Gibson in the amount of $5,000 after he was indicted. Michael testified that $32,500 was for representing Ronald in the first case, and $25,000 was for his own representation in the second case.

Ronald testified that his knowledge of the payments came from Michael, and that Michael's statements were consistent with his testimony.

Anderson painted a completely different picture of the arrangement. He asserted that he had an agreement with Michael to represent Ronald in the first case for $50,000 plus expenses. He only represented him in the second case because of what he viewed as his failure to represent Ronald adequately in the first case. He said he was never retained by Michael, although in

---

**1.** Anderson represented Ronald on the appeal, although it was unsuccessful. *United States v.*

*Strawser,* 739 F.2d 1226 (7th Cir.1984).

February, 1982, he had proposed a written contract covering representation of Michael for $40,000, plus expenses. He said there was never an agreement. The $20,000 later paid by Michael was applied on the $30,000 still due as of February 20, 1982 for Ronald's defense.

Judge Ackerman did not resolve the question whether the amount paid was $47,500 or $57,500, nor did he find that Michael had agreed to pay $50,000 plus expenses for Ronald's defense. Rather, "[t]o be fair to counsel, I take the salient facts, though disputed, in the light most favorable to him."

Finding that Anderson had been paid $47,500 for representing Ronald Strawser in the first case, the Judge found the fee exorbitant and unreasonable under the circumstances. *United States v. Strawser*, 581 F.Supp. 875, 877 (C.D.Ill.1984). A reasonable fee for the services rendered in both cases and on appeal would have been $20,000. *Id.* at 878. Anderson was ordered to reimburse the United States Treasury $1,582.50 for Michael's representation and to remit $25,117.50[2] to the Treasury pending forfeiture proceedings.[3] *Id.* at 878.

Anderson relies on *United States v. Vague*, 697 F.2d 805 (7th Cir.1983). In that case the district judge learned from the presentence report the amount of the attorney's fee paid by the convicted defendant. Without complaint from the defendant and because the judge sensed a violation of the code of ethics, the judge held a hearing, determined that an excessive fee had been charged, and ordered a refund of the excess.

This court, viewing the procedure as serving only the purpose of discipline for unethical conduct, concluded that it was "a mistake to graft onto a lawsuit an issue that the judge is neither asked nor required to resolve." 697 F.2d at 809. While noting

that the district judge's concern was "praiseworthy," this court indicated that he should have reported the matter to an appropriate bar association committee, or should have invoked the procedure prescribed for discipline by the rules of his court. It was held that the district judge exceeded his power when he ordered restitution.

■ The situation now before us had an impact on the responsibilities of the district court beyond those of discipline for unethical conduct.

Ronald, a convicted defendant pursuing an appeal, claimed that his lawyer was demanding money for services for which he had already been paid. If the district court could do nothing to compel the performance of the service without an additional fee, Ronald informed the district court that he was indigent, and asked for appointment of counsel at government expense. Ronald also informed the court that some of the money had been paid Anderson for Michael's defense. Because of Michael's indigency, a probable result of Michael's payments to Anderson, the government had been required to pay $1,582.50 for other counsel. If Anderson owed Michael a refund because the conflict prevented performance of the service, the refund, if collected, would be reimbursable to the Treasury under 18 U.S.C. § 3006A(f).

We conclude that in this situation, unlike *Vague*, there was a solid foundation for the procedure undertaken by Judge Ackerman.

■ Appellant also argues that it was an abuse of discretion to find the fee excessive. An abuse of discretion occurs when, in reviewing or determining a fee, the court applies the wrong standard or fails to analyze the applicable factors. *State of Illinois v. Sangamo Const. Co.*, 657 F.2d 855, 862–63 (7th Cir.1981); *Waters v. Wisconsin Steel Works of Int. Harvester Co.*, 502 F.2d 1309, 1322 (7th Cir.1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214 (1976).

---

2. $25,117.50 plus $1,582.50 plus $20,000.00 equals $46,700.00, not $47,500.00. The difference may be due to inadvertent error, or perhaps an allowance for expenses. There was no cross appeal.

3. At the hearing Michael testified that all the funds used to pay Anderson were derived from drug transactions. As such, they were subject to forfeiture under 21 U.S.C. § 881(a)(6).

Appellant contends that the standard applied by the district court, the Illinois Code of Professional Responsibility, was inappropriate. But as was noted in *Vague,*

[a]lthough the federal courts are not bound to apply state rules of professional ethics to lawyers practicing before them, *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.E.2d 1342 (1957), we may assume without deciding that they would apply the Illinois rule as interpreted in *Kutner* [78 Ill.2d 157, 399 N.E.2d 963, 964–65 (1979)]....

697 F.2d at 806. The standards found in Rule 2–106 of the Illinois Code of Professional Responsibility are identical to the factors this court adopted as guides in determining the reasonableness of a fee. *Waters,* 502 F.2d at 1322. Those factors were:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

*Id.* Ill.Code Prof.Resp. DR 2–106. These factors were also adopted by the American Bar Association and are set out in its Model Code of Professional Responsibility. Model Code of Prof.Resp. DR 2–106 (1982).

The district court considered all of the factors listed above. *Strawser,* 581 F.Supp. at 876–77. There was no abuse of discretion.

As stated by the district judge, "[i]t was readily apparent that Ronald Strawser was not going to trial in either case and the cases against him were not complex." *Id.* at 877. Anderson submitted time sheets (prepared for the hearing, and not contemporaneous entries). He claimed that he and Gibson spent over 800 hours on both of Ronald's cases.

The court found that it was "inconceivable ... that a competent attorney could utilize 800 hours on this representation." *Id.* Judge Ackerman had presided over both cases, had thus observed Anderson's court appearances and was familiar with the results of his out of court activity. An attorney's effort is rarely limited to an eight hour day or forty hour week, but on the unlikely hypothesis that Gibson and Anderson devoted forty hour weeks to these cases, 800 hours would represent ten solid weeks each. Barely 17 weeks elapsed from arrest to plea in the first case and 11 from indictment to plea in the second case. The claim of time spent seems preposterous.

Judge Ackerman's findings were not unreasonable nor clearly erroneous.

The order appealed from is AFFIRMED.