**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**U.S. CURRENCY, IN THE AMOUNT OF $103,387.27, Defendant,**

v.

**Walter Harry STAMP, Tonya Stamp and LaTonya Stamp, A Minor by her parents and next friend, Walter Harry Stamp and Tonya Stamp, Intervenors/Claimants Counter Plaintiffs–Appellants,**

v.

**UNITED STATES MARSHAL SERVICE, Counter Defendant–Appellee.**

No. 87–2981.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1988.

Decided Dec. 21, 1988.

Larry G. Whitney, Indianapolis, Ind., for defendant.

Sue Hendricks Bailey, Asst. U.S. Attys., U.S. Attys. Office, Indianapolis, Ind., for plaintiff-appellee.

Before POSNER, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

This appeal grows out of a forfeiture action against $103,387.27[1] in United States Currency. The district court granted the government's motion to strike the claimants' "Answer, Defenses and Counterclaim" for failing to file a properly verified claim. The court also declined to extend the time for filing a verified claim which would have enabled claimants to amend their claim. We reverse the district court's judgment insofar as it denied the claimants an extension of time to file an amended claim.

### I.

The Drug Enforcement Agency ("DEA") seized $103,387.27 in United States Currency from Harry and Tonya Stamp's residence in Anderson, Indiana, pursuant to a seizure warrant issued under 21 U.S.C.A. § 881(a)(6)[2] (West 1981) on April 14, 1986. The seizure followed a search of the Stamps' residence conducted pursuant to a

---

1. The complaint for forfeiture, warrant of arrest of property and the caption indicate the amount seized was $103,387.27; however, the seizure warrant and appellants' opening brief state that $103,430.27 was seized on April 1, 1986. Appellee states that $103,308.27 was seized in April 1986. Nowhere in the parties' briefs are these discrepancies explained.

2. Section 881(a)(6) provides:
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

 * * * * * *

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

warrant. The DEA seized the currency, alleging it had been furnished or was intended to be furnished in exchange for a controlled substance, that it constituted the proceeds of such an exchange, and that it had been used to facilitate violations of Subchapter I of Title 21. 21 U.S.C.A. §§ 801–904 (West 1982). The United States Marshal took custody of the currency by order of the district court.

On December 15, 1986, the U.S. Attorney filed a complaint for forfeiture in the United States District Court for the Southern District of Indiana. A copy of the complaint was served on claimants' attorney, Larry G. Whitney,[3] on the same day. The district court issued orders for publication of notice and for warrant of arrest of property pursuant to Rules C(3) and (4) of the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims[4] on January 8 and 15, 1987, respectively. On January 19, Whitney filed a "Claim of Owner" which stated:

### CLAIM OF OWNER

And now W. Harry Stamp, Tonya Stamp, and an [sic] minor child of the Stamps, by counsel, Larry G. Whitney, authorized agent for this matter, owners of the U.S. CURRENCY in the amount of $103,387.27, etc., attached by the marshal, under process of this Court at the instance of United States Attorney for the Southern District of Indiana on January 15, 1987, and the persons above named, W. Harry Stamp, Tonya Stamp, and an [sic] minor child of the Stamps, declare they are the true and bona fide owners of the currency and negotiable instruments, and that no other person is the owner thereof.

WHEREFORE, owners pray to defend accordingly.

The claim was signed by Attorney Whitney as "Attorney and Agent for W. Harry Stamp, Tonya Stamp and minor child of Stamps."

On March 16, the district court permitted Harry Stamp, Tonya Stamp and LaTonya Stamp, the minor child of Harry and Tonya, to intervene. After two extensions of time were granted, the Stamps ("claimants") filed an answer to the complaint for forfeiture. The government filed a motion to strike the answer on May 27,[5] alleging that claimants had failed to file a proper claim of ownership.

The district court granted the government's motion to strike, reasoning that claimants had failed to file a properly verified claim. The court also refused to extend the time for filing a claim, entered judgment for the United States and ordered the currency paid into the United States Treasury. The district court denied the Stamps' subsequent motion to set aside the order.

■ On appeal, the Stamps argue that their ownership claim was properly verified, but, if it was not, that the claim was in substantial compliance with the rules so that it should be permitted to stand as filed. Finally, the Stamps contend that the district court should have granted them an extension of time to amend their claim if it was deficient.[6]

---

3. Whitney later filed his appearance on behalf of the currency. He continued to be the attorney of record for this appeal.

4. The Supplemental Rules for Certain Admiralty and Maritime Claims specifically apply to "the procedure in statutory condemnation proceedings analogous to maritime actions *in rem,* whether within the admiralty and maritime jurisdiction or not." Fed.R.Civ.P., Supp. Rule A. The Supplemental Rules apply to civil forfeiture actions under 21 U.S.C.A. § 881. *See United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 210 n. 2 (7th Cir. 1985).

5. The government earlier filed a motion to strike on April 22, 1987, on the erroneous belief that claimants had failed to file any claim of ownership.

6. The Stamps also make other "equitable" arguments directed toward the sufficiency of their claim. Because these arguments were raised for the first time on appeal, this court will not consider them as it is well-settled that an issue not presented to the district court below cannot be raised for the first time on appeal and form a basis for reversal. *See, e.g., Country Fairways, Inc. v. Mottaz,* 539 F.2d 637, 642 (7th Cir.1976).

## II.

In *United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, this court described at length the judicial forfeiture process:

A judicial forfeiture proceeding is a civil action *in rem.* The United States attorney for the district where the seizure occurred commences a judicial forfeiture proceeding by filing a complaint as described in Supplemental Rule C(2). The complaint must describe with reasonable particularity the property that is the subject of the action, must state the place of seizure, and must contain any allegations required by the statute pursuant to which the action is brought. *See* Fed.R. Civ.P., Supp. Rule C(2).

Upon the filing of a complaint, the clerk of the district court issues a warrant for the arrest of the property that is the subject of the action. *See* Fed.R. Civ.P., Supp. Rule C(3). By order of the court, the plaintiff then must publish notice of the action and arrest in a newspaper of general circulation in the district. The notice must specify the time within which an answer is to be filed as provided by Rule C(6). *See* Fed.R.Civ.P., Supp. Rule C(4).

Any claimant of property that is the subject of a judicial condemnation proceeding must file a claim within ten days after process has been executed or within such additional time as may be allowed by the court, and must file an answer within twenty days after the filing of the claim. *See* Fed.R.Civ.P., Supp. Rule C(6). The claim "shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitu-

tion and the right to defend the action." *Id.* Once the procedural requirements of Rule C(6) are met, a claimant has standing to defend the forfeiture.

*Id.* at 212–13.

■■■ The issue here is whether claimants' claim of ownership constitutes a properly verified claim under Rule C(6). As this court and others have observed, verification is an essential element of any claim because of the substantial danger of false claims. *U.S. v. $2,857,* 754 F.2d at 213; *Baker v. United States,* 722 F.2d 517, 519 (9th Cir.1983); *United States v. Fourteen (14) Handguns,* 524 F.Supp. 395 (S.D.Tex. 1981). The Stamps do not challenge the importance of verification, but rather, contend that their claim of ownership was verified within the meaning of Rule C(6). Claimants argue there is no judicially recognized definition of verification and offer their own definition from a host of sources.[7] We disagree that there is no definition of what constitutes a proper verification and decline to adopt claimants' standard for a properly verified claim under Rule C(6).

■■■ Rule C(6) requires that claims be "verified on oath or solemn affirmation" but offers no further guidance as to what will constitute a verified claim. Its silence, though, does not open the door to limitless creative definitions of verification, for as other courts have held, state law fills the void created by Rule C in this respect. In *United States v. Banco Cafetero International,* 608 F.Supp. 1394, 1399–1400 (S.D. N.Y.1985), *aff'd,* 797 F.2d 1154 (2d Cir. 1986), for example, the court stated that, "[i]n the absence of anything to the contrary in the local rules of the District within which the Complaint is filed, compliance

---

**7.** The Stamps somewhat curiously argue that they should have been permitted to amend their claim because it was filed before the execution of process occurred. That is, assuming the claim is insufficient, they argue that because their claim was premature (being filed before process was executed) and was not even required to be filed until after process was executed, they should not be penalized for their early—and defective—filing. First we note that this argument was not raised below, so it cannot be raised on appeal for the first time. *Country*

*Fairways, Inc. v. Mottaz,* 539 F.2d 637. But beyond that, we fail to see how this supports claimants' position. Even if their initial claim was filed before process was executed (apparently it was), they never attempted to refile or amend their claim within the 10 days of process, as they apparently could have done. Nevertheless, the critical issue on appeal remains whether the district court abused its discretion by not granting claimants an extension of time to file a verified claim.

with the verification procedures of the forum state should be sufficient" (quoting 7A J. Moore & A. Pelaez, *Moore's Federal Practice* ¶ C.08 at p. 622 (2d ed. 1983)). Although the court in that case was referring to Rule C(2)—which requires that forfeiture complaints be verified—we think its reasoning applies equally to Rule C(6) in view of the fact that both rules require "verification" and because the rules contain identical language concerning verification.[8]

Here the forfeiture complaint was filed in the Southern District of Indiana. Since no local rule addresses verification, the district court quite properly turned to Indiana law for the meaning of verification. Indiana Trial Rule 11(B) provides in part:

> (B) Verification by Affirmation or Representation. When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:
>
> "I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.
>
> (Signed) _____"

Indiana courts have held that a proper verification under Trial Rule 11(B) requires the actual swearing to the truth of statements by the subscriber and that, at a minimum, it implicitly subject the signer to penalties for perjury. In *Gary Community Mental Health Center, Inc. v. Indiana Department of Public Welfare*, 496 N.E.2d 1345 (Ind.Ct.App.1986), the court held that a petition for review of an administrative decision, though duly notarized, was not properly verified, explaining that "a notarized petition without any indication that the statements contained therein are true will not suffice." *Id.* at 1347. To be adequately verified, the court held, the document "must use some language to indicate that the statements contained in [the document] are true...." *Id.* Likewise, the court in *Indiana Civil Rights Commission v. City of Muncie*, 459 N.E.2d 411 (Ind.Ct.App.1984), declared:

> The Supreme Court of Indiana has held that ' "[v]erification ... includes both the actual swearing to the truth of the statements by the subscriber and also the certification thereto by the notary or other officer authorized by law to administer oaths." ' *State ex rel. Hodges v. Kosciusko Circuit*, (1980) Ind., 402 N.E. 2d 1231, at 1233....

*Id.* at 414.

 The claim of ownership filed by claimants' attorney failed to include any formal affirmation of the truthfulness of the statements contained in the claim. Nowhere in the claim did the Stamps or their attorney attest to or swear that the statements contained therein were true. Thus, even though the claim was notarized, it was not verified within the meaning of Rule C(6).[9] Accordingly, the Stamps lacked statutory standing[10] to bring their

---

**8.** Rule C(2) requires that "the complaint shall be verified on oath or solemn affirmation." Fed.R. Civ.P., Supp. Rule C(2). Rule C(6) similarly commands that a claim "shall be verified on oath or solemn affirmation...." Fed.R.Civ.P., Supp. Rule C(6).

**9.** At oral argument, the Stamps, for the first time, contended that their Claim of Owner was adequately verified apparently because they believe they were subject to prosecution for perjury if it was false under Ind.Code Ann. § 35–44–2–1(a)(1) (West 1986) (person commits perjury if he makes a false statement under oath or affirmation, knowing the statement to be false or not believing it to be true). This does not constitute a verification under Indiana law. *See Gary Community Mental Health*, 496 N.E.2d

at 1347. More significantly, claimants have waived this argument because they raised it for the first time at oral argument and not in the district court, or for that matter even in their briefs to this court.

**10.** There are two different forms of standing in a forfeiture case such as this: Article III standing and statutory standing. To contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing, otherwise there is no "case or controversy." *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987). With respect to statutory standing, once the procedural rules of Rule C(6) are met, a claimant has standing to defend the forfeiture.

claim, and the district court properly granted the government's motion to strike. We now must decide whether the district court abused its discretion in denying claimants an opportunity to amend their claim.

### III.

Forfeiture is a harsh but effective civil penalty. In its seizure warrant, the government here alleges that in excess of $100,000 in cash was furnished and/or intended to be furnished in exchange for controlled substances or that it may be traceable to such exchanges. Under 21 U.S.C.A. § 881, Congress has authorized the confiscation of money which is intended to be used in or which represents proceeds of a controlled substance transaction. But while the government may have a solid case for forfeiture, the alleged owner of the property should have an opportunity to challenge the forfeiture, provided he has standing to do so.

Under Rule C(6), a claimant must "file his claim within 10 days after process has been executed, or within such additional time as may be allowed by the court." It is thus within the district court's discretion to permit an extension of time to file a claim. *See United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432 (9th Cir.1985); *United States v. One (1) 1979 Mercedes 450 SE*, 651 F.Supp. 351 (S.D.Fla.1987). The question here is whether the district court abused its discretion by denying claimants an extension of time to file an amended claim. An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered or when the court "fails to analyze the applicable factors." *United States v. Strawser*, 800 F.2d 704, 707 (7th Cir.1986), *cert. denied, sub nom. Anderson v. United States*, 480 U.S. 906, 107 S.Ct. 1350, 94 L.Ed.2d 521 (1987); *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir.1987) (abuse of discretion standard implies that the judge must actually exercise his discretion); *United States v. Kramer*, 827 F.2d 1174, 1179 (8th Cir.1987). *See also United States v. $149,345 United States Currency*, 747 F.2d 1278, 1282 (9th Cir.1984) (no evidence that court considered relevant factors when exercising discretion under Rule C(6)). Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court. *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir.1984). Here, the phrase "abuse of discretion" sounds "more pejorative than the user really intends." *Id.* The district court's thoughtful decision accurately addressed the law regarding whether a verified claim was filed; its "abuse of discretion" was limited to its failure to consider some essential factors in its decision to deny claimants an extension of time to file an amended claim of ownership.

The court in *U.S. v. One (1) Mercedes, supra*, identified several factors which have guided courts in exercising their discretion in forfeiture claims, two of which are relevant here: (1) whether the claimant has advised the court and government of his interest in the defendant—here the currency—before the claim deadline, and (2) whether the government would be prejudiced by allowing the late filing. *Id.* at 353 (citations omitted). Courts also consider whether there has been a good-faith effort to comply initially with Rule C(6)'s requirements. *See United States v. Properties Described in Complaints: 764 Rochelle Drive*, 612 F.Supp. 465, 467 n. 3 (N.D.Ga. 1984) *aff'd*, 779 F.2d 58 (11th Cir.1985); *United States v. 1967 Mooney M20–F aircraft*, 597 F.Supp. 531 (N.D.Ga.1983). While this court requires that meticulous attention be paid to detail, it also believes that "'amendments should be liberally permitted to add verifications to claims originally lacking them,'" *Yukon Delta Houseboat*, 774 F.2d at 1436 (quoting 7A J. Moore & A. Pelaez, *Moore's Federal Practice*, ¶ C.16, at 700.16 (2d ed. 1983)), provided that the amendment would not undermine the "goals underlying the time re-

*U.S. v. $2,857*, 754 F.2d at 213. Only claimants' statutory standing is at issue on this appeal.

striction and verification requirements of Rule C." *Id.*

■ In *U.S. v. One (1) Mercedes, supra,* the district court extended the time to file a claim despite the claimant's failure to offer any reasons supporting the failure to file, because the government failed to specifically show how it would be prejudiced by a late filing. The Ninth Circuit in *Yukon Delta Houseboat, supra,* similarly focused on the absence of any resultant prejudice in reversing a district court's refusal to extend the time to file a verified claim. In so holding, the court observed that the government's forfeiture complaint alleged that the claimants were the owners of the seized property and that the claimants had filed a timely answer, even if they had not filed a verified claim. The court stated:

> [W]here a claimant has made known to the court and the government his interest in the subject property (in this case, by filing an answer asserting ownership of the property) before the deadline set for the filing of a proper claim has passed, the policy interest underlying the requirement of a timely verified claim would not be injured by allowing the claimant to perfect his claim by subsequent verfication.

*Id.* at 1436.[11] These cases teach that, where the putative claimants have placed the court and the government on notice of their interest in the property and their intent to contest the forfeiture, courts will grant extensions of time, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances.

The Stamps' attorney, upon service of the forfeiture complaint, filed a claim of ownership claiming that the Stamps were the "true" owners of currency, but failed to properly verify the claim. Before that, he had filed his appearance with the district court after being served with a copy of the complaint. Also prior to filing the claim, the Stamps' attorney attempted to reach the Assistant U.S. Attorney handling the matter to request an extension of time. While these efforts undeniably fell short of satisfying the requirements of Rule C(6), it appears that, when taken together, they either actually or should have put both the district court and the government on notice that the claimants were claiming ownership and intended to contest the forfeiture. Indeed, the government's verified complaint alleges that Harry Stamp is the owner of the currency and the claimants' attorney was served with a copy of the complaint. Thus, there is no dispute as to the ownership of the currency,[12] making the absence of a proper verification less significant. *Yukon Delta Houseboat,* 774 F.2d at 1436. Under these circumstances it is difficult to see how the government could be prejudiced by the grant of an extension of time to file a verified claim.

Moreover, it appears that allowing claimants an extension of time would contravene neither the goals underlying Rule C's time restrictions nor its verification requirements. *Yukon Delta Houseboat,* 774 F.2d at 1436. First, as discussed, the Stamps, through their attorney, came forward immediately and filed their claim, thus making known their interest in the currency to the court and the government. Secondly, the absence of a verification is not that significant here because there appears to be no real doubt as to the claimants' ownership of the currency (as noted above, the government alleged in its verified complaint that it believed Harry Stamp to be the owner of the currency). *Id.*

■ The district court was completely correct in stating that it has no obligation to "review the filings of a potential claimant in order to notify the claimant of any defects in its filings." *U.S. v. $2,857,*

---

11. *United States v. Beechcraft Queen Airplane,* 789 F.2d 627 (8th Cir.1986), is not to the contrary. There the court upheld the grant of the government's motion to strike for failing to file a verified claim; however, while doing so the court indicated that it might have decided differently had the claimant filed "some sort of claim or supporting document in addition to his answer." *Id.* at 630.

12. Although the government argued that the claimants failed to specify what portion of the seized currency each claimant owned, it did not challenge the general assertion of ownership.

754 F.2d at 215. But this single observation, no matter how true, does not constitute the exercise of the court's discretion. The district court failed to consider several essential factors such as the apparent lack of prejudice to the government if an extension of time were granted, and claimants' apparent good-faith attempts to comply with Rule C. Thus, it failed to exercise its discretion. *In re American Reserve Corp.*, 841 F.2d at 162; *U.S. v. Strawser*, 800 F.2d at 707. Where the claimants have made a good-faith effort to file a claim and where the government can show absolutely no prejudice by the granting of an extension of time, we think it an abuse of discretion to deny an extension of time to amend a claim of ownership, absent any countervailing factors. *Yukon Delta Houseboat*, 774 F.2d 1432; *U.S. v. One (1) Mercedes*, 651 F.Supp. 351. This is especially true in a case where the defect is technical,[13] where it was made by the attorney and not the claimants, and where the amount of currency is so large. We do not go so far as to make the decision on whether to grant an extension of time, however. The district court is still in the best position to make this assessment and to weigh the various factors we have set out and to consider other relevant factors.

We therefore reverse and remand to the district court with instructions to further consider, in a manner consistent with this opinion, the Stamps' request for an extension of time to file an amended claim of ownership.

REVERSED AND REMANDED.

---

13. By characterizing the failure to file a properly verified claim as a technical flaw, we in no way imply that the requirement is not essential. To the contrary, we continue to hold that verification is an essential and necessary element of any claim, *U.S. v. $2,857*, 754 F.2d at 213, and caution future claimants to rigidly follow the requirements for verifying a claim under Rule C(6).